**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ENGINEERS CONSTRUCTORS, INC., Respondent.**

No. 84–5582.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 16, 1985.

Decided March 7, 1985.

---

Elliott Moore, Margaret Bezou (argued), Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Jeff Weintraub (argued), Memphis, Tenn., for respondent.

Before KEITH, KENNEDY and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

The National Labor Relations Board (Board) petitions for enforcement of its order finding Engineers Constructors, Inc., (ECI) in violation of 29 U.S.C. § 158(a)(1), (5) due to ECI's refusal to bargain with the employee representative elected in a Board-directed election. We have jurisdiction pursuant to 29 U.S.C. § 160(e), and, accordingly, grant enforcement.

## I.

On June 7, 1983, Laborers' International Union of North America, Local No. 1441, AFL–CIO filed a petition with the Board seeking certification as the representative for construction and general laborers of ECI. A hearing on the petition held on June 22, 1983 established that ECI was performing concrete and foundation work at the corporate headquarters of Federal Express in Memphis, Tennessee. The work began in January 1983 and was estimated to be completed in March or April 1984. However, most of ECI's laborer work would be completed by mid-July 1983, with the rest of the work consisting of clean-up.

ECI took the position that the petition should be dismissed since the potential bargaining unit was contracting. On the date of the hearing, ECI had 90 employees at the job site, 53 of whom were laborers.

On July 1, 1983, the Acting Regional Director ordered an election among

All construction and general laborers and all other employees employed in a laborers classification at the Employer's jobsite located at 4001 Airways Boulevard, Memphis, Tennessee, excluding all other employees, including office clerical, technical, professional employees, guards, and supervisors as defined in the Act.

The director's opinion stated as follows:

From the record it is clear that the Employer's work on this particular project will end at some point in the future. At present that point is expected to be reached some time during March 1984. However, some eight to nine months will pass before the project is completed. While the complement of employees in the laborer classification will apparently decline during this period, this decline for the most part will be slow and gradual. The work to be performed by laborers in the future, while differing in the exact duties to be performed, will be of the same nature as that performed in the past. Under these circumstances, as some eight to nine months of collective bargaining will remain before the final cessation of work, and as the basic nature of the work will remain the same, I find that the present situation does not constitute a contracting unit.

On July 27, 1983, the Board denied ECI's petition for review on the ground that it raised no substantial issues.

On July 29, 1983, an election was held with 25 of the 36 ballots cast favoring representation. On August 23, 1983, the union was certified as the exclusive representative of the employees, and on October 5, ECI's petition for review of the certification was denied.

After ECI subsequently refused to bargain with the union, the union filed a charge with the Board alleging violations of 29 U.S.C. § 158(a)(1), (5). The Board issued a complaint and General Counsel moved to transfer the case to the Board and for summary judgment. On December 13, 1983, the Board entered an order transferring the proceedings and giving notice to ECI to show cause why summary judgment should not be entered. On April 30, 1984, the Board issued an order finding ECI in violation of 29 U.S.C. § 158(a)(1), (5) and directing ECI to bargain with the union.

## II.

ECI contends that the acting director erred in ordering an election since the bargaining unit was contracting and the nature of work performed by the laborers was changing from construction to clean-up. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). "Normally, under the Board's existing rules to warrant an immediate election where there is definite evidence of an expanding or contracting unit, the present work complement must be substantial and representative of the ultimate complement as projected both as to the number of employees and the number and kind of job classifications." *Douglas Motors Corp.*, 128 NLRB 307, 308 (1960) (footnote omitted).

The regional director's determination that the work of the laborers subsequent to the election was representative of the work they were performing previously and at the time of the election is supported by substantial evidence. Testimony at the hearing indicated that clean-up work or similar manual labor was typically required of laborers by ECI and that laborers engaged in such work both before and after the construction work was completed. Therefore, although the laborers' work prior to July 1983 consisted primarily of construction work, clean-up work was clearly part of their duties. Further, since most construction was completed by the July 29,

1983 election, the work force of laborers engaged primarily in clean-up work was representative of the ultimate bargaining unit. Therefore, we find ECI's contention that the changing nature of the work force made an election inappropriate without merit.

 The Board's determinations regarding whether and when an election should be held are reviewed for abuse of discretion. *Revco D.S., Inc. v. NLRB*, 653 F.2d 264, 265 (6th Cir.1981); *NLRB v. P.A.F. Equipment Co., Inc.*, 528 F.2d 286, 287 (10th Cir.1976) ("The Board's determination of whether to conduct an election is not subject to modification by a reviewing court."); *NLRB v. Broyhill Company*, 528 F.2d 719, 721 (8th Cir.1976); *Harlan #4 Coal Co. v. NLRB*, 490 F.2d 117, 120 (6th Cir.), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974); *NLRB v. Keller Aluminum Chairs Southern, Inc.*, 425 F.2d 709, 710 (5th Cir.1970); *Gould, Inc. v. Fuchs*, 486 F.Supp. 164, 168 (D.Conn.1980). While the judgment of the Board is subject to judicial review, "if its construction of the statue is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Iron Workers, AFL–CIO*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *NLRB v. Truck Drivers, Local Union No. 449, International Brotherhood of Teamsters*, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957) ("The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board subject to limited judicial review.") (footnote omitted). "The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence, must be enforced." *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98

S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978) (footnote omitted); *NLRB v. Pipefitters Union Local No. 120*, 719 F.2d 178, 181 (6th Cir.1983); *Thomas Industries, Inc. v. NLRB*, 687 F.2d 863, 866 (6th Cir.1982); *NLRB v. Retail Store Employees Union, Local 876*, 570 F.2d 586, 590 (6th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 109 (1978). "Unless Congress has given the NLRB a specific directive ... the courts should defer to the NLRB's exercise of expertise and discretion—including decisions it bases on presumptions drawn from past experience...." *Beth Israel Hospital & Geriatric Center v. NLRB*, 688 F.2d 697, 699 (10th Cir.1982). However, despite this broad discretion, "[c]areful judicial scrutiny of the Board's action is necessary ... in the face of accusations of failure to abide by precedent since the courts have an obligation to ensure that administrative agencies adhere to enumerated policies and procedures." *Hall-Brooke Hospital v. NLRB*, 645 F.2d 158, 160 (2d Cir.1981).

 Board precedent provides no rule dispositive of this case. A decision regarding the timing of an election involves balancing the often conflicting policies of maximum employee participation in the selection of a bargaining agent and permitting employees as immediate representation as possible. *Clement-Blythe Companies*, 182 NLRB 502 (1970), *enforced*, 65 Lab.Cas. (CCH) ¶ 11756 (4th Cir.1971). The Board has consistently held that when a job is scheduled for completion within four months no useful purpose is served by determining representation. *Larson Plywood Company, Inc.*, 223 NLRB 1161 (1976); *Plum Creek Lumber Co., Inc.*, 214 NLRB 619 (1974); *Martin Marietta Aluminum, Inc.*, 214 NLRB 646 (1974); *In the Matter of General Motors Corporation*, 88 NLRB 119, 120 (1950); *In the Matter of Fraser-Brace Engineering Company, Inc.*, 38 NLRB 1263, 1264 (1942); *In the Matter of Fruco Construction Company*, 38 NLRB 991, 993 (1942); *In the Matter of the Ohio Public Service Company*, 36 NLRB 1269 (1941). It is likewise clear that mere reduction of the number of employees

in a unit is not alone sufficient to justify postponing an election. *Wm. L. Hoge & Co., Inc.*, 103 NLRB 20, 22 (1953); *In the Matter of Owen Steel Company, Inc.*, 92 NLRB 1334, 1335–36 (1951).

Further, in the election area, a case-by-case approach is followed. *Clement-Blythe Companies*, 182 NLRB at 502 n. 4.[1] Similarly,

> Congress, as well as the Board, has recognized the need in this industry for permitting the collective-bargaining process to begin as early as possible, so as to accommodate to the fluctuating nature and unpredictable duration of construction activities. . . . Although waiting for a full, or almost full, employee complement would permit fuller employee participation, it might well delay collective bargaining for groups of employees who wanted union representation, and the delay might well result in bargaining for only a very short duration, with the project completed before any meaningful results could ensue. For these reasons, we give more emphasis in the construction industry to the desirability of an early choice given to the employees than to postponing an election in order to achieve a full employee complement.

*Id.* at 502–03.

ECI relies on the case of *M.B. Kahn Construction Co., Inc.*, 210 NLRB 1050 (1974). In *Kahn*, the regional director directed an election on January 28, 1974, the Board stayed the election on February 26, 1974 and completion of the project was scheduled for June or July 1974. Therefore, about five months of work remained at the time the regional director directed the election, and four months remained at the time the Board acted on the case to stay the election. In contrast, nine months of work remained in the pending case at the time of the regional director's order, and eight months remained when the NLRB denied review. Further, the Board has directed an election when as few as seven months of work remained. *General Electric Company*, 101 NLRB 1341, 1344 (1952) (election directed in December 1952, where plant to cease operation in mid-August 1953).

 It is not within our province to lay down a general rule regarding the timing of elections. However, we find that the order of an election in this case is not contrary to Board precedent. Likewise, the determination that the eight months prior to completion constituted a sufficient amount of time for bargaining to justify an election is a reasonably defensible application of the statute. Therefore, we hold that the order of an election was not an abuse of discretion.

### III.

 Finally, ECI has moved in this court, pursuant to 29 U.S.C. § 160(e),[2] to admit new evidence. The proffered evidence consists of records of change orders from Federal Express and an affidavit from ECI's senior project manager indicating that the projected completion date is

---

1. In determining whether the employee complement is "representative and substantial" so as to warrant holding an immediate election, the Board has avoided the use of hard and fast rules. The size of the employee complement at the time of the hearing; the nature of the industry; the time expected to elapse before a full, or substantially larger, complement of employees is on hand; and other variables all militate against a rigid formula and dictate the Board's approach. The Board must often balance what are sometimes conflicting *desiderata,* the insurance of maximum employee participation in the selection of a bargaining agent, and permitting employees who wish to be represented as immediate representation as possible.

*Clement-Blythe Companies*, 182 NLRB at 502 (footnote omitted).

2. 29 U.S.C. § 160(e) provides in pertinent part:

> If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record.

February 1, 1985, and that ECI would have three laborers on the site until February 1. Since the proffered evidence has no relevance to our determination of whether the Board abused its discretion in upholding the regional director's direction of an election, ECI's motion is denied.

Accordingly, the Board's petition for enforcement is GRANTED.